LOKEN, Circuit Judge.
 

 The novel issue of statutory construction before us is whether unpaid attorney’s fees from a debtor’s prior unsuccessful bankruptcy reorganization proceedings are “claims of the kind specified in” § 507(a)(1) of the Bankruptcy Code, 11 U.S.C. § 507(a)(1),
 
 [1]
 
 and are therefore entitled to first priority in distributing the debtor’s subsequent Chapter 7 estate pursuant to § 726(b) of the Code. The bankruptcy and district courts answered this question in the affirmative and awarded attorney David 0. Carter administrative expense priority on some $23,000 in unpaid fees. The United States Trustee appeals. We reverse.
 

 I.
 

 Charles and Jeraine Larsen are South Dakota family farmers who filed for Chapter 11 bankruptcy relief in 1985. A reorganization plan was confirmed, and the Chapter 11 case was closed. In 1990, the Larsens were unable to make payments required under the plan, and a secured creditor commenced foreclosure on their farm. The Larsens then filed for further bankruptcy relief under Chapter 12. Wben that petition was dismissed as a bad faith filing, the Larsens filed a Chapter 13 petition which was also promptly dismissed.
 
 See In re Larsen,
 
 122 B.R. 733 (Bankr.D.S.D.1990). Nearly three years later, the Larsens filed this Chapter 7 case.
 

 Carter served as attorney for the Larsens during their Chapter 11,12, and 13 proceedings. As we explain below, the fee of a debtor’s attorney is an administrative expense, and a Chapter 11 plan therefore typically provides for payment of that fee when the plan commences.
 
 See
 
 11 U.S.C. § 1129(a)(9)(A). However, the Larsens’ Chapter 11 plan expressly provided for subsequent court approval of Carter’s fees as
 
 *785
 
 debtors’ attorney, and further allowed Carter to accept payment of those fees in the form of farm services to be provided by the Lar-sens over a five-year period. Thus, when the Larsens’ Chapter 11 plan collapsed in 1990, Carter applied for allowance of his unpaid fees related to the Chapter 11 proceeding, and the bankruptcy court awarded him $18,-410.24 in Chapter 11 fees and expenses. Two months later, the court entered an order in the dismissed Chapter 12 proceeding awarding Carter an additional $8,513.26 for his work as the Larsens’ attorney in that proceeding.
 

 The Larsens retained other counsel when they filed for Chapter 7 relief in April 1993. In that proceeding, Carter applied for allowance, as an administrative expense claim, of the unpaid fees and expenses awarded in the Chapter 11 and Chapter 12 proceedings. The bankruptcy court granted Carter an administrative expense claim, thereby giving his claim priority over unsecured Chapter 7 creditors, and the district court affirmed.
 
 In re Larsen,
 
 169 B.R. 404 (D.S.D.1994). On appeal, the Trustee argues that Carter has only an unsecured claim on the Larsens’ Chapter 7 estate for his work as debtors’ attorney in the prior Chapter 11 and Chapter 12 proceedings. We review this issue of statutory construction
 
 de novo. See In re Juhl Enters.,
 
 921 F.2d 800, 802 (8th Cir.1990).
 

 II.
 

 Many bankruptcy debtors are represented by counsel on matters relating to the bankruptcy case. If the debtor’s attorney is to be paid from the bankruptcy estate, then the amount to be paid and the manner of payment must be subject to bankruptcy court supervision for the protection of other parties with competing claims on that estate. Four different sections of the Code govern these issues. As relevant here, these provisions apply equally to Chapter 7, 11, and 12 proceedings.
 

 First, § 330(a) authorizes the bankruptcy court to compensate “officers” of the bankruptcy case, including the debtor’s attorney:
 

 (a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to ... the debtor’s attorney—
 

 (1) reasonable compensation for actual, necessary services rendered by such ... attorney ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and
 

 (2) reimbursement for actual, necessary expenses.
 

 Here, the Trustee concedes that attorney Carter’s claim in this Chapter 7 proceeding is for payment of fees and expenses that were initially awarded under § 330(a) in the Lar-sens’ prior Chapter 11 and Chapter 12 proceedings.
 

 Second, § 503(b)(2) includes “compensation and reimbursement awarded under section 330(a)” in the administrative expense claims that “shall be allowed.” This makes the court’s award of attorney’s fees and expenses a claim against the bankruptcy estate. Third, § 507(a)(1) provides that “administrative expenses allowed under section 503(b)” are granted first priority in distributing the bankrupt’s estate, a priority which is of critical importance when the total claims against an estate exceed its assets. This priority is then implemented in the fourth relevant section, § 726:
 

 (a) Except as provided in section 510 of this title, property shall be distributed—
 

 (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title....
 

 (b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), or (7) of section 507(a) of this title ... shall be made pro rata among claims of the kind specified in each such particular paragraph ....
 

 The question here is whether, under § 726(a)(1), Carter’s claim for fees and expenses awarded under § 330(a) in the Lar-sens’ unsuccessful Chapter 11 and Chapter 12 proceedings is a claim “of the kind specified in” § 507(a)(1) in the later Chapter 7
 
 *786
 
 case. The district court began its analysis by stating that “Mr. Carter’s claim is of the kind specified in paragraph (1) of section 507(a).” Further, the court reasoned, because the Larsens’ Chapter 11 plan expressly provided for post-confirmation allowance of such administrative expenses, the court “agrees with the Bankruptcy Court that the ‘administrative quality of the claim did not die "with the confirmation process.’ ” Therefore, the court concluded, “Carter’s administrative expense claims must be paid pro rata among claims of the same kind in the distribution of property from the Chapter 7 estate.”
 
 In re Larsen,
 
 169 B.R. at 407-08.
 

 Our difficulty lies with the district court’s initial premise. There is a troublesome ambiguity in § 726(a)(l)’s cross reference to claims “of the kind specified” in § 507(a)(1). The phrase could mean claims “similar to” those so specified. But that construction is dangerously broad. It would seem to include, for example, unpaid administrative expenses from a debtor’s prior Chapter 7 proceeding twenty years earlier, or even unpaid administrative expenses from a related but different debtor’s bankruptcy. Carter’s claim to priority here is not so absurd, but neither the district court nor the bankruptcy court explained how their interpretation of this phrase would avoid absurd results in other cases. Indeed, neither court explained precisely how it was defining claims “of the kind specified.”
 

 The obvious alternative construction of this phrase is that claims “of the kind specified in” § 507(a)(1) means only those claims that qualify for § 507(a)(1) priority
 
 in this Chapter 7 proceeding.
 
 A problem with this interpretation is that it seems to render the phrase “of the kind” superfluous, contrary to the canon of statutory construction that every word in a statute has meaning, because this meaning could have been expressed simply by referring to “claims specified in” § 507(a)(1). However, since § 726 simultaneously cross references multiple categories of § 507(a) claims, it is not clear that drafters intending this narrower construction would consider the phrase “of the kind” superfluous. And in any event, words in a statute that are truly superfluous may be ignored.
 
 See American Radio Relay League, Inc. v. F.C.C.,
 
 617 F.2d 875, 879 (D.C.Cir.1980); 2A
 
 Sutherland Statutory Construction
 
 § 47.37, at 283-84 (5th ed. 1992). Thus, from a purely textual standpoint, either the broad or the narrow construction of this phrase seems plausible.
 
 [2]
 

 However, when the history and purpose of these claim priority provisions are considered, we think it becomes clear that the Trustee’s narrower interpretation of § 726 is correct. The legislative history of § 726 makes no mention of the phrase “of the kind specified.”
 
 See
 
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 383-84 (1977),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5963, 6339-40; S.Rep. No. 989, 95th Cong., 2d Sess. 96-98 (1978),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5787, 5882-84. But that history says much about Congress’s intent in granting administrative expense claims first priority in the distribution of a Chapter 7 estate. Such claims are limited to “[t]he actual, necessary costs and expenses of preserving the [bankruptcy] estate.” H.R.Rep. No. 595,
 
 supra,
 
 at 355,
 
 reprinted in
 
 1978 U.S.C.C.A.N. at 6311. They are given priority because “[t]hose who must wind up the affairs of a debtor’s estate must be assured of payment, or else they will not participate in the liquidation or distribution of the estate.”
 
 Id.
 
 at 186-87,
 
 reprinted in
 
 1978 U.S.C.C.A.N. at 6147. Because such priority represents an exception to the Code’s general policy of equality of distribution among all creditors, it must be strictly construed.
 
 See In re Northwest Fin. Express, Inc.,
 
 950 F.2d 561, 563 (8th Cir.1991). Extending administrative expense priority to claims awarded in a different bankruptcy case furthers neither the purpose of preserv
 
 *787
 
 ing the Chapter 7 estate nor the overarching objective of creditor equality. We therefore conclude that the phrase, “of the kind specified” in § 507(a)(1), limits first priority distribution under § 726 to claims which have qualified as administrative expense claims in that Chapter 7 proceeding.
 
 [3]
 

 This interpretation of § 726 is consistent with the Seventh Circuit’s decision in
 
 In re Jartran, Inc.,
 
 886 F.2d 859 (7th Cir.1989), which considered whether an administrative claim from a first Chapter 11 proceeding would be granted administrative claim priority in the debtor’s second Chapter 11 case. The court concluded that “[t]o receive an administrative priority in
 
 Jartran II,
 
 Frue-hauf must demonstrate its claims relative to
 
 Jartran II;
 
 an administrative priority in
 
 Jar-tran I
 
 does not translate to an administrative priority in
 
 Jartran II.” Id.
 
 at 870-71. The Seventh Circuit followed this aspect of
 
 Jartran
 
 in
 
 In re Official Comm. of Unsecured Creditors of White Farm Equip. Co.,
 
 943 F.2d 752, 757 (7th Cir.1991) (“administrative claims are intimately tied to a single bankruptcy estate”),
 
 cert. denied,
 
 503 U.S. 919, 112 S.Ct. 1292, 117 L.Ed.2d 515 (1992). Although these cases involved administrative expense claims governed by § 503(b)(1)(A), rather than by § 503(b)(2) and § 726, the same general principles are relevant in each context.
 

 Under this interpretation of § 726, it is apparent that Carter’s claim for administrative expense priority must be denied. The Larsens’ Chapter 7 estate was not created until they filed a Chapter 7 petition in April 1993.
 
 See
 
 11 U.S.C. § 541(a). Carter’s fee awards from the prior reorganization proceedings are not § 330(a) awards
 
 in the Chapter
 
 7
 
 bankruptcy case
 
 because (i) they were not made after notice to interested parties and the trustee in this proceeding, as § 330(a) requires; (ii) there was no judicial finding that these were “actual, necessary” services and expenses from the standpoint of this liquidation proceeding, as § 330(a)(1) and (2) require; and (iii) there was no finding that Carter’s services benefitted the Chapter 7 estate, as we required in
 
 In re Reed,
 
 890 F.2d 104 (8th Cir.1989). Because they were not awarded under § 330(a) in the Chapter 7 proceeding, Carter’s fee awards cannot qualify as administrative expenses under § 503(b)(2), nor were they formally allowed after notice and hearing in the Chapter 7 case, as § 503(b) requires. Thus, Carter’s Chapter 7 claim is not “of the kind specified” in § 507(a)(1).
 

 Finally, Carter suggests that it is inequitable to treat his claim less favorably than administrative expense claims in a Chapter 11 proceeding that has been converted to a Chapter 7 liquidation. Section 726(b) expressly grants a somewhat limited first priority to such preconversion administrative claims:
 

 [I]n a case that has been converted to this chapter under section 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion....
 

 However, the two situations are not comparable. When a single bankruptcy case is converted from a reorganization proceeding to a Chapter 7 liquidation, there is good reason to assume that all administrative expenses allowed under § 330 are entitled to at least some priority for benefitting the ultimate estate. That assumption is far less appropriate when dealing with administrative expense claims carried over to a second, distinct bankruptcy case. In addition, the priority which the district and bankruptcy courts awarded to Carter’s claim — full pro rata equality with the Chapter 7 administrative expense claims — is
 
 greater than
 
 that awarded to preconversion claims under the above-quoted portion of § 726(b). We reject the
 
 *788
 
 illogical conclusion that Congress intended by its silence to bestow greater priority on claimants who took no part in preserving or administering the Chapter 7 estate.
 

 For the foregoing reasons, we conclude that Carter’s claim for fees and expenses is not entitled to administrative expense priority in the distribution of the Larsens’ Chapter 7 estate. The judgment of the district court affirming the bankruptcy court’s order of November 9, 1993, is reversed.
 

 [1]
 

 . This opinion will cite Bankruptcy Code provisions in effect when the Chapter 7 case was filed in 1993. Code revisions adopted in the Bankruptcy Reform Act of 1994, Pub.L. No. 103-394, 108 Stat. 4106, apply only to cases commenced after October 22, 1994.
 

 [2]
 

 . Unfortunately, drafters of the Code used the phrase "of a kind” in many contexts.
 
 See,
 
 e.g., §§ 503(b), 523(a)(3). Indeed, the proliferation continues; a 1984 amendment to the Code's definition of a security, now § 101(49)(B)(vi), added the phrase "of a kind,” again without explanation. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 421(h)(1), 98 Stat. 333, 368. The cases construing other uses of the phrase are of little or no help to us here.
 
 See In re Haga,
 
 131 B.R. 320, 326-27 (Bankr.W.D.Tex. 1991);
 
 In re Hotel Nev. Corp.,
 
 75 B.R. 174 (Bankr.D.Nev.1987).
 

 [3]
 

 . This interpretation is consistent with prior law under the differently worded Bankruptcy Act.
 
 See
 
 11 U.S.C. § 102(a) (1976) (compensation to officers of the estate shall be "paid or allowed out of the estates in which they were incurred”);
 
 Conrad, Rubin & Lesser v. Pender,
 
 289 U.S. 472, 476, 53 S.Ct. 703, 704, 77 L.Ed. 1327 (1933) (legal fees to be given priority under the Act then in effect “are those rendered in aid of the administration of the estate and the carrying out of the provisions of the Act”).